IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALCO INDUSTRIES, INC., on behalf of itself and all others similarly situated, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. |
| | : | |
| v. | : | |
| | : | |
| INDUSTRIAL PACKAGING SUPPLIES, INC., A/K/A and D/B/A STRETCHFILMDEPOT.COM | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CLASS ACTION COMPLAINT

Plaintiff, Alco Industries Inc. ("plaintiff"), by its undersigned counsel, for its Complaint against defendant, Industrial Packaging Supplies, Inc. (also known and doing business as, StretchFilmDepot.com) (collectively "IPS"), alleges as follows:

## INTRODUCTION

1.      This case is a class action that challenges and seeks recovery on account of defendant's practice of sending unsolicited facsimiles in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.,* and its underlying Federal Communications Commission ("FCC") implementing regulations as set forth at 47 C.F.R § 64.1200, *et seq.*

2.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47 U.S.C. § 227, Congressional Statement of Findings #5, as well as an unwelcome and intrusive taxation of the resources and equipment of

the recipients of such efforts.

3.      1992, the FCC enacted its original implementing regulations pursuant to an explicit grant of authority from Congress, as set forth in 47 USC § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.").  The FCC's Regulations construing the TCPA are set forth at 47 C.F.R. § 64.1200, *et seq.*  Since 1992, the FCC has periodically issued newer interpretive regulations and orders.

4.      As it pertains to plaintiff's complaint, in enacting the TCPA, Congress prohibited a person or entity from faxing, or having an agent fax, advertisements without the recipient's prior express invitation or permission ("Junk Fax").  *See* 47 U.S.C. § 227, *et seq.* and 47 C.F.R. § 64.1200, *et seq.*

5.      Specifically, in this context, The TCPA makes it unlawful to "use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine" unless certain stringent requirements are met by the sender. 47 U.S.C. § 227(b)(1)(C) and 47 CFR § 64.1200(a)(4).

6.      The TCPA defines a fax as an "unsolicited advertisement" if it advertises "the commercial availability or quality of any property, goods, or services" and is transmitted without the recipient's "prior express invitation or permission." *Id.* § 227(a)(5) and 47 CFR § 64.1200(f)(15).

7.      The TCPA provides a private right of action and provides statutory damages of $500.00 per violation, which can be trebled.  47 U.S.C. § 227(b)(3)(A).

8.      The only exception to the TCPA's statutory prohibition against unsolicited fax advertisements is enumerated in 47 U.S.C. § 227(b)(1)(C) and the FCC implementing regulations at 47 CFR § 64.1200(a)(4).

2

9.     Specifically, an unsolicited fax advertisement does not violate the TCPA only if all three of the following elements are met:  (1) the sender has an "established business relationship" with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the sender and recipient or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt out notice meeting the requirements of the statute.  47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

10.     Defendant's transmission of its Junk Fax advertisements fails to meet any prong of the three-pronged exception, let alone all three of the prongs, as required by the TCPA.  *See* Exhibit A (defendant's Junk Fax).

11.     Plaintiff, Alco Industries, Inc., on behalf of itself and all persons and entities similarly situated, files this Complaint against the defendant, IPS, for its violation of the TCPA.

## JURISDICTION AND VENUE

12.     The District Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

13.     This Court also has subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because (i) upon information and belief there are 100 or more class members; (ii) upon information and belief there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff/class member (*i.e.* plaintiff) and one defendant (*i.e.* defendant IPS) are citizens of different states.

14.     Venue is proper in this district under 28 U.S.C. § 1391(b), (c) and (d) because a defendant committed and directed its violation of plaintiff's rights and of the TCPA in this

District by disseminating one or more Junk Faxes into this District, and where, by virtue of such conduct, defendant would be subject to jurisdiction in this District.

### THE PARTIES

15.      Plaintiff, Alco Industries, Inc., is a Pennsylvania corporation with its principal place of business in this District at 820 Adams Avenue, Trooper, PA 19403.  Plaintiff received defendant's Junk Fax via its dissemination to Alco's wholly owned division, the John Wood Company, with its principal place of business in this District at 98 Highland Avenue, Oaks, PA 19546.

16.      Defendant, IPS, also known as, or doing business as, StretchFilmDepot.com, is a corporation duly organized under the laws of South Carolina with a principal place of business at 10 Jack Casey Court, Fountain Inn, South Carolina, 29644.

17.      Defendant, IPS, describes itself as a full scale distributor of packaging supplies across the nation and abroad.

18.      Defendant, IPS states on its website that "Our company has been a stretch film supplier and stretch wrap machine supplier since 1976…Our service department can provide you with the necessary expertise if you need parts to your stretch film machine. **StretchFilmDepot.com** is a single source for all of your stretch wrap needs." *See* http://www.ipack.com/solutions/packaging-cost-savings-20-stretch-film/ (last visited February 5, 2014).

19.      Moreover, the StetchFilmDepot.com website page bears the statement "StretchFilmDepot.com an affiliate of IPS Packaging." *See* http://www.stretchfilmdepot.com (last visited February 5, 2014).

4

20.     Clicking on the "about us" link on the StretchFilmDepot.com website takes one directly to the IPS Packaging website. *Id.* Moreover, the StretchFilmDepot.com website's "Terms of Service" recite the "IPS Packaging Terms of Service." *See* http://www.stretchfilmdepot.com/terms-of-use.php (last visited February 5, 2014).

21.     In addition, the IPS website contains an active link to StretchFilmDepot.com. *See* http://www.ipack.com/solutions/packaging-cost-savings-20-stretch-film/ (last visited February 5, 2014).  Upon information and belief, Industrial Packaging Supplies, Inc. and StretchFilmDepot.com share certain telephone and facsimile numbers, and IPS has owned the StretchFilmDepot.com domain and website during the period of time relevant to this action.

22.     Plaintiff avers, on the basis of information and belief, that a number of persons and entities assisted IPS in transmitting junk facsimiles in violation of the TCPA as alleged herein.  The identity of such individuals and entities is not presently known to plaintiff, and plaintiff anticipates that such individuals and entities will be identified during discovery.

## LEGAL PREDICATE OF CLAIMS

23.     The claims of the plaintiff, and the class it seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit invasions of privacy and unwelcome intrusion of certain telemarketing practices.

24.     The TCPA was also enacted to protect the property rights of the recipients of unsolicited facsimile advertisements.

25.     The TCPA prohibits the use of a facsimile machine or computer to send unsolicited advertisements for goods and services.  *See* 47 U.S.C. §227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4) ("no person or entity may [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine . . . ")

26.     The only exception to this statutory prohibition is enumerated in 47 U.S.C. §

227(b)(1)(C) and the FCC implementing regulations at 47 CFR § 64.1200(a)(4).

27.     Specifically, an unsolicited fax advertisement does not violate the TCPA only if

the defendant establishes all three of the following elements are met: (1) the sender has an

"established business relationship" with the recipient (47 U.S.C. §227(b)(1)(C)(i) and 47 C.F.R.

§ 64.1200(a)(4)(i)); (2) the sender obtained the recipient's fax number either through a voluntary

communication between the sender and recipient or through a public source on which the

recipient voluntarily made the number available (47 U.S.C. §227(b)(1)(C)(ii) and 47 C.F.R. §

64.1200(a)(4)(ii)); and (3) the fax has an opt out notice meeting the requirements of the statute

(47 U.S.C. §227(b)(1)(C)(iii) and 47 C.F.R. § 64.1200(a)(4)(iii)).

28.     These three elements do not insulate defendant in this case.

29.     In order for an Opt Out Notice to be valid, the TCPA requires, among other

things, "that a notice contained in an unsolicited advertisement complies with the requirements

under this subparagraph only if— "(i) the notice is clear and conspicuous and on the first page of

the unsolicited advertisement; [and] (ii) the notice states that the recipient may make a request to

the sender . . . not to send any future unsolicited advertisements . . . and that failure to comply,

within the shortest reasonable time as determined by the commission . . . with such a request

meeting the requirements . . . is unlawful. . . ."

30.     The FCC has further clarified the Opt Out Notice requirements in 47 C.F.R. §

64.1200(a)(4)(iii), which state that "A notice contained in an advertisement complies with the

requirements under this paragraph only if— . . . (B) The notice states that the recipient may make

a request to the sender of the advertisement not to send any future advertisements to a telephone

facsimile machine or machines and that failure to comply, within 30 days, with such a request

meeting the requirements under paragraph (a)(4)(v) of this section is unlawful; (C) The notice

sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section; . . . .

and (E) The telephone and facsimile numbers and cost-free mechanism identified in the notice

must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week."

31.     The TCPA requires that even facsimile advertisements being sent to consumers

who consented to receipt, or with whom the advertiser had an established business relationship,

must include language on the facsimile which clearly informs the recipient that they may request

that future facsimiles cease, and that failure to remove the consumer's facsimile from the

telemarketer's database within thirty days is itself unlawful.  47 U.S.C. §227 and 47 CFR §

64.1200.  These requisites are referred to in sum as a "Compliant Opt Out Notice."

32.     If a fax advertiser does not include a Compliant Opt Out Notice, that advertiser is

precluded from raising an "Established Business Relationship" ("EBR") defense or a "voluntary

communication defense" in any litigation arising from that fax advertising.  47 CFR §

64.1200(a)(4)(i-iii).

33.     In fact, failing to provide a Compliant Opt Out Notice on a facsimile

advertisement is a separate and distinct violation of the TCPA as well as the FCC promulgating

regulations.

34.     The TCPA statute provides for a private right of action "based on a violation of ...

the regulations prescribed" thereunder.  *See* 47 U.S.C. § 227(b)(3)(A).

35.     Specifically, 47 U.S.C. § 227(b)(3)(A), provides as follows:

> A person or entity may, if otherwise permitted by the laws or rules of
> court of a State, bring in an appropriate court of that State, (A) an
> action based on a violation of this subsection or the regulations
> prescribed under this subsection to enjoin such violation, (B) an
> action to recover for actual monetary loss from such a violation, or to
> receiver $500 in damages for each violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

36.     The FCC has provided examples as to what constitutes an unsolicited advertisement in its Regulations.  *See* 71 Fed. Reg. 25967-01, 972-73 (May 3, 2006). Additionally, while the FCC has clarified that four types of messages do not fall under the dictates of the Junk Fax provisions of the TCPA ((1) informational messages; (2) transactional messages; (3) non-commercial messages from non-profit organizations; and (4) non-advertisement messages with an incidental amount of advertising), *see id.,* the Junk Fax advertisements sent by defendant are not of the type pardoned from the dictates of the TCPA.

37.     The Junk Faxes sent to plaintiff, and the members of the class, by defendant, clearly were advertisements within the meaning of the TCPA, any Opt-Out Notice on the facsimile was non-compliant within the meaning of the TCPA and there was no nullifying established business relationship or voluntary communication between plaintiff, the class plaintiff seeks to represent, and defendant.

### PLAINTIFF'S RECEIPT OF AN UNSOLICITED JUNK FAX

38.     On January 28, 2014, as well as on possible other dates, defendant IPS and/or its agents transmitted unsolicited facsimile advertisements to the plaintiff, and by way of fair inferences, to other consumers in Pennsylvania and elsewhere throughout the United States.  A copy of the advertising content sent to plaintiff by defendant is attached as Exhibit A.

39.     The plaintiff did not have an established business relationship with the defendant.

8

40.     The plaintiff did not give express or implied prior invitation or permission for the transmission of the advertisements sent to plaintiff via facsimile by defendant.

41.     The plaintiff did not give its prior express consent for the transmission of the advertisements sent to plaintiff via facsimile by defendant.

42.     The defendant's facsimiles did not contain a TCPA compliant Opt Out Notice, in that the facsimile advertisements did not contain a clear and conspicuous notice informing the recipient that it may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply within 30 days is unlawful.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, as a class action, pursuant to the TCPA, on behalf of a class of all persons or entities similarly situated throughout the United States as follows:

> The Plaintiff class consists of all persons or entities within the United States to whom Defendant transmitted, or caused to be transmitted, facsimile advertisements promoting Defendant, IPS, and its products or services, at any time within four years prior to the filing of the instant Complaint, in a manner not compliant with the TCPA.  Excluded from the Class are Defendant, its employees and agents.

Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

44.     Within the past four years, defendant, IPS, and/or its agents has engaged in advertising via unsolicited facsimile transmission in negligent, willful or knowing violation of the TCPA.

45.    The nature of the facsimile advertising done by defendant was mass marketing, designed to solicit new customers.

46.    The widespread nature of the fax marketing campaigns at issue is evidenced by the fact that the fax advertisements promoted the availability of products and services from defendant, IPS, which describes itself as a full scale distributor of packaging supplies across the nation and abroad.  http://www.ipack.com/solutions/about-us/ (last visited February 5, 2014).

47.    The widespread nature of the fax marketing campaign at issue is further evidenced by the fact that the plaintiff received facsimile advertisements promoting the business and services of defendant, IPS, despite the fact that plaintiff's business is located in Pennsylvania.

48.    Defendant's direct involvement in the fax campaign is indicated by the notice on the advertisements, directing receivers the Junk Fax advertisements to the internet website of its affiliated sales entity at StretchFilmDepot.com and supplying receivers with defendant's sales department contact telephone numbers.

49.    Defendant, IPS, seeks to derive a direct financial benefit from increased sales of its products, nationwide, as derived through its unlawful Junk Fax advertising program.

50.    As the entity whose goods are being advertised and that benefits from these Junk Fax advertisements, defendant, IPS, is liable for its unsolicited fax advertising.

51.    A "sender" is defined as, "[T]he person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

52.    Defendant and/or its agents failed to obtain prior express invitation or permission from the plaintiff and the class members prior to sending their Junk Fax and failed to take all

steps necessary to ensure that its facsimile marketing campaign was compliant with the TCPA.

53.   The class as defined above is identifiable by phone records, fax transmittal records, and fax number databases, used by defendant and/or its agents, in transmitting its unsolicited facsimile advertisements.

54.   The potential class members are thought to number potentially in the thousands and constitute a class so numerous that joinder of all class members is impracticable as required by Fed.R.Civ.P. 23(a)(1).  Plaintiff is a member of the class.

55.   There are questions of law and fact common to plaintiff and to the proposed class, as required by Fed.R.Civ.P. 23(a)(2), including but not limited to the following:

a.   Whether defendant violated the TCPA and FCC promulgating regulations by engaging in fax advertising restricted by the TCPA.

b.   Whether the facsimiles sent by defendant to class members constitute unsolicited advertisements.

c.   The manner and method defendant used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited fax advertisements.

d.   Whether the facsimile advertisements at issue contained valid TCPA compliant Opt Out Notice;

e.   Whether the defendant violated the provisions of 47 U.S.C. § 227 and 47 CFR § 64.1200;

f.   Whether defendant should be enjoined from transmitting facsimile advertisements in the future;

g.   Whether the plaintiff and the members of the class are entitled to statutory damages as a result of defendant's actions.

h.      Whether the court should award treble damages and other relief allowed by the TCPA.

56.      Plaintiff's claims are typical of the claims of all class members as required by Fed.R.Civ.P. 23(a)(3) as plaintiff is a member of the class and asserts the same TCPA claims are asserted on behalf of all class members.

57.      Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class as required by Fed.R.Civ.P. 23(a)(4), it will fairly and adequately protect the interests of the class, and it is represented by counsel skilled and experienced in class action litigation.

58.      Class certification is appropriate under Fed.R.Civ.P. 23(b)(1), because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for the defendant, and (b) as a practical matter, adjudication of the plaintiff's claims will be dispositive of the interests of class members who are not parties.

59.      Class certification is also appropriate, under Fed.R.Civ.P. 23(b)(2), because the defendant has acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate.

60.      Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy, as required by Fed.R.Civ.P. 23(b)(3), because: (a) proof of plaintiff's claims will also prove the claims of the class through common proof without the need for separate or individualized proceedings; (b) evidence regarding defenses or any exceptions to liability that the defendant may assert will come from the defendant's records and will not require

12

individualized or separate inquiries or proceedings; (c) the defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members; (d) a class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proof; and (e) this case is inherently manageable as a class action in that:

     i.    the defendant can identify persons or entities who received the fax transmissions from the business records of defendant and its agents;

    ii.    statutory damages are provided for in the TCPA and are the same for all class members;

    iii.    as a practical matter, the claims of the class are likely to go unaddressed absent class certification because the amount likely to be recovered by individual class members does not support individual litigation.

61.    Plaintiff intends to file a motion to certify the class on the foregoing grounds in accordance with the Federal Rules of Civil Procedure, the local Rules of the Court, and any scheduling Orders that the Court may enter with respect thereto.

## COUNT I: VIOLATION OF THE TCPA

62.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63.    Defendant, IPS, and/or its agents, caused unsolicited facsimile advertisements to be sent to plaintiff and to the facsimile machines of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

64.    Defendant failed to provide the requisite Opt Out Notice, on its advertisements, of a recipient's right to cease receiving such advertisements and a cost free mechanism to make

such request.

65.     Failure to provide a compliant opt out notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the FCC promulgating regulations.

66.     The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of the TCPA, and upon a finding that a defendant willfully or knowingly violated the relevant provisions of the TCPA , the court may, in its discretion, increase the amount of the damage award to an amount equal to not more than 3 times the amount. That is, a court in its discretion, can treble the statutory damages if said court determines the TCPA violation was willful or knowing. 47 U.S.C. § 227(b)(3)(A).

67.     Defendant violated 47 U.S.C. § 227, *et seq.* by sending advertising faxes (such as Exhibit A) to plaintiff and the other members of the class without first obtaining their prior express invitation or permission and by not displaying the proper opt out notice required by 64 C.F.R. § 1200, *et seq.*

## COUNT II: INJUNCTIVE RELIEF

68.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69.     The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

70.     The plaintiff, acting on behalf of the class, respectfully petitions the Court to order defendant to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of itself and the other members of the class, the plaintiff prays for the following relief:

1.     That defendant immediately be restrained from engaging in future telemarketing in violation of the TCPA.

2.     That this Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

3.     That the named plaintiff and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by defendant or $1,500 for each willful violation of the TCPA by defendant.

4.     That the named plaintiff and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

The class plaintiff requests a jury trial as to all claims of the complaint so triable.


Dated:  February 27, 2014          BOLOGNESE & ASSOCIATES, LLC

                                   By: _____
                                   Anthony J. Bolognese
                                   Joshua H. Grabar
                                   Two Penn Center
                                   1500 John F. Kennedy Blvd., Suite 320
                                   Philadelphia, PA  19102
                                   Telephone: (215) 814-6750
                                   Facsimile: (215) 814-6764

                                   Attorneys for Plaintiff

# EXHIBIT

# A



Toll Free: 888-496-7964  ✳  Fax: 864-862-3815

# FACSIMILE TRANSMITTAL

To: *Purchasing*                          Fax:

From: *Mary*                              Date:

Re: *Stretch Film*                        Pages: *2 (including cover)*

CC:

☐Urgent      ☐For Review      ☐Please Comment      ☐Please Reply

Notes:

*Good Afternoon,*

*Attached you will find our current stretch film pricing. Give me a*

*call if you have any questions or if you would like to place an order.*

*Thank You,*

*Mary*

*If you have accidentally received this Fax in error, please call
866-327-3415

01-28-2014 10:00 - 866-327-3415                                                                 Pg-1

# STRETCH FILM

## 888-496-7964



### Cast Machine Stretch Film

| Part Number | Gauge/Type | Width | Length | Rolls/Skid | Price/Roll |
|---|---|---|---|---|---|
| 5618 | 75 | 20" | 5,000' | 40 | $44.35 |
| 268030 | Elite | 20" | 7,000' | 50 | $46.82 |
| 268823 | Premier | 20" | 5,000' | 50 | $39.10 |
| 5637 | 90 | 20" | 5,000' | 40 | $62.35 |
| 109769 | 115 | 20" | 4,000' | 40 | $54.50 |
| 326755 | Premier | 30" | 5,000' | 20 | $58.65 |
| 87572 | 90 | 30" | 5,000' | 20 | $77.83 |

### Stretch Film - 18" Black

| Part Number | Gauge/Type | Width | Length | Case/Skid | Price/Case |
|---|---|---|---|---|---|
| 5499 | 80 | 18" | 1,500' | 48 | $57.30 |

### Stretch Film - 12" Clear

| Part Number | Gauge/Type | Width | Length | Case/Skid | Price/Case |
|---|---|---|---|---|---|
| 5529 | 80 | 12" | 1,500' | 48 | $33.70 |

### Pre-Stretch

| Part Number | Gauge/Type | Width | Length | Case/Skid | Price/Case |
|---|---|---|---|---|---|
| 355148 | Pre | 5" | 1,000' | 60 | $35.25 |
| 299984 | Pre | 16" | 1,476' | 48 | $24.85 |
| 340371 | Pre | 18" | 1,476' | 48 | $32.00 |

### Stretch Film - 15" Clear

| Part Number | Gauge/Type | Width | Length | Case/Skid | Price/Case |
|---|---|---|---|---|---|
| 5545 | Premier | 15" | 1,500' | 48 | $23.80 |

### Hand Bundling Film

| Part Number | Gauge/Type | Width | Length | Rolls/Case | Price/Case |
|---|---|---|---|---|---|
| 5542 | Elite | 3" | 1,000' | 18 | $35.40 |
| 59833 | Elite | 5" | 1,000' | 12 | $35.40 |
| 5572 | Elite | 20" | 1,000' | 4 | $41.20 |
| 5461 | Premier | 2" | 700' | 24 | $30.30 |
| 39018 | Premier | 3" | 700' | 18 | $35.30 |
| 39240 | Premier | 5" | 700' | 12 | $36.60 |

### Stretch Film - 18" Clear

| Part Number | Gauge/Type | Width | Length | Case/Skid | Price/Case |
|---|---|---|---|---|---|
| 5557 | Premier | 18" | 1,500' | 48 | $31.00 |

## Call us for all your packaging needs!